# In the United States Court of Federal Claims

No. 17-1875C

(E-Filed:  March 14, 2018)[1]

| | |
|---|---|
| GLOBAL DYNAMICS, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>THE UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>GIACARE and MEDTRUST JV, LLC,<br><br>and<br><br>MEDTRUST, LLC,<br><br>        Intervenor-defendants. | Bid Protest; Sole-Source Bridge Contract; Challenge to GAO Decision; Doctrine of Laches. |

Craig A. Holman, Washington, DC, for plaintiff.  Michael E. Samuels and Alexandra L. Barbee-Garret, of counsel.

---

[1]      This opinion was issued under seal on February 27, 2018.  The parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged, on or before March 14, 2018.  On March 13, 2018, the parties notified the court that they had no proposed redactions to the court's opinion of February 27, 2018.  See ECF No. 68.  Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

Tanya B. Koenig, Trial Attorney, with whom appeared Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Jessica E. Hom and Evan C. Williams, United States Army Legal Services Agency, of counsel.  John T. Harryman and Eugene J. Smith, United States Army Medical Command, of counsel.

Jacqueline K. Unger, Washington, DC, for intervenor-defendants.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

This bid protest involves a dispute related to the award of a contract for registered nursing (RN) services for the San Antonio Military Healthcare System (SAMHS).  See ECF No. 1 at 7-8.  Before the court are the following motions:  (1) plaintiff's motion for judgment on the administrative record, ECF No. 43; (2) intervenor-defendants' cross-motion for judgment on the administrative record, ECF No. 50; (3) defendant's motion to dismiss the first count of the complaint, ECF No. 51; and (4) defendant's cross-motion for judgment on the administrative record as to the second and third counts of the complaint, ECF No. 51.  The administrative record has been filed in two parts, as ECF Nos. 47 and 48.  Oral argument was deemed unnecessary.

For the reason stated herein, plaintiff's motion for judgment on the administrative record, ECF No. 43, is **DENIED in part**; intervenor-defendants' cross-motion, ECF No. 50, is **DENIED in part**; defendant's motion to dismiss the first count of the complaint, ECF No. 51, is **GRANTED**; and defendant's cross-motion, ECF No. 51, is **GRANTED in part**.  This matter is **REMANDED** to the agency for the purpose of identifying any additional facts underlying its decision to award a fifth sole-source contract, as challenged in the second count of the complaint.

I.      Background

The contract at issue, for RN services in SAMHS, has a long and tortured history.  The court will detail that history to the extent it is relevant to its analysis.

The solicitation was first issued by the United States Army Medical Command (MedCom) on September 14, 2012, as a small-business set aside.  See ECF No. 47-1 at 774-886.  The solicitation called for a single-award, indefinite duration indefinite quantity contract with a five-year ordering period.  See id. at 682, 797.  The expected value for the contract was $20,000 for the first year and a maximum amount of $200,000,000 for the duration of the contract.  See id. at 777.  MedCom intended to "award a contract resulting from this solicitation to the responsible offeror whose offer

conforming to the solicitation will be the best value offered to the Government, price and other factors considered." Id. at 870.

The solicitation required consideration of the following factors: (1) Personnel Methodology (which included three subfactors addressing plans for recruitment, retention and employee relations, and compensation); (2) Management Capability; (3) Staffing Approach; (4) Past Performance; and (5) Price. See id. at 1077-80. The agency was to assign a technical/risk rating to each of the first three factors. See id. at 1078. The solicitation stated that proposed prices would be evaluated using "price analysis, cost analysis, and cost realism techniques" to ensure prices were "considered realistic and reasonable." Id. at 1080.

Plaintiff submitted its initial proposal on October 16, 2012. See ECF No. 47-2 at 1-241. On December 12, 2012, MedCom notified plaintiff that it had been eliminated from the competitive range. See ECF No. 47-3 at 34. Plaintiff was then notified on January 24, 2013, that GiaMed was the successful offeror. See ECF No. 47-9 at 10. The following day, January 25, 2013, plaintiff filed a protest with the Government Accountability Office (GAO), challenging its removal from the competitive range. See id. at 23-141.

In the spring of 2013, while plaintiff's GAO protest was pending, MedCom issued a sole-source award to the incumbent contractor, MedTrust, LLC. See ECF No. 47-10 at 830-917. This initial sole-source contract covered the period from April 1, 2013, through September 30, 2013, and included a six-month option period. See id. at 830. The GAO sustained plaintiff's protest on May 6, 2013, see ECF No. 48-1 at 1-12, and MedCom undertook corrective action as a result, see id. at 128-43. While re-evaluating offers as part of the corrective action, MedCom issued MedTrust a second sole-source contract in February 2014, covering the period from April 1, 2014, through September 30, 2014. See ECF No. 48-2 at 179-83.

In August 2014, plaintiff submitted its final proposal. See ECF No. 48-3 at 890-959. The contracting officer notified plaintiff that it had been selected as the awardee by letter dated January 29, 2015. See id. at 1091. Competing offeror GiaMed filed a protest challenging plaintiff's status as a small business on February 5, 2015. See ECF No. 48-6 at 4. GiaMed is a joint venture between GiaCare, LLC, and MedTrust, the joint venture partners who have intervened in the present case. See ECF No. 1 at 10. The contracting officer forwarded the protest to the Small Business Administration (SBA). See ECF No. 48-6 at 4.

In March 2015, because the SBA had not yet made a determination on the merits of GiaMed's protest, MedCom issued a third sole-source contract to MedTrust. See ECF No. 48-3 at 1092-99. On April 7, 2015, while the SBA size protest was still pending, MedCom amended the solicitation and reopened it to allow offerors to submit revised

proposals by April 20, 2015.  See id. at 1263-1332.  In response, plaintiff filed a protest with this court challenging the decision to reopen the solicitation.  See ECF No. 1 at 11 (citing Global Dynamics, LLC v. United States, Case No. 15-384C, the earlier-filed protest).  MedCom reversed course and cancelled its plan to reopen competition, and the court dismissed plaintiff's protest as moot.  See Global Dynamics, Case No. 15-384C, ECF No. 13 (Dismissal Order).

MedCom awarded the contract to plaintiff on June 17, 2015.  See ECF No. 48-3 at 1334-1418.  GiaMed filed a bid protest action with the GAO on June 29, 2015.  See id. at 1434-1580.  One month later, on July 30, 2015, the SBA issued its decision that plaintiff qualified as a small business for purposes of the solicitation.  See ECF No. 48-6 at 1-11.  GiaMed filed an appeal of the SBA's size determination to the Office of Hearings and Appeals (OHA).  See id. at 103.

Following proceedings in GiaMed's bid protest before the GAO, MedCom elected to take corrective action, which involved a new price evaluation and a new source selection decision.  See id. at 99-100.  The GAO dismissed the protest on August 26, 2015, due to MedCom's decision to take corrective action.  See id. at 101-02 (GAO Decision).  And on October 29, 2015, OHA affirmed the denial of GiaMed's size protest.  See id. at 103-17 (OHA Decision).

MedCom conducted its corrective action between August 2015 and June 2016.  See id. at 118-27.  In June 2016, MedCom again awarded the contract to plaintiff.  See id. at 128-29.  Then, on July 25, 2016, GiaMed filed a second GAO protest.  See id. at 133-230.  While the GAO protest was pending, MedCom awarded MedTrust a fourth sole-source contract.  See ECF No. 48-9 at 125-34.

The GAO sustained GiaMed's protest in part on November 2, 2016.  See id. at 941-63.  In its decision, the GAO held:  (1) that the agency "unreasonably failed to consider the degree to which Global Dynamics' direct labor rates would enable it to implement the technical approach for which the [agency] assigned it a strength," id. at 951-52; (2) that the "source selection authority relied upon . . . erroneous calculations in determining that there was no statistical difference between the direct labor rates of Global Dynamics and GiaMed," id. at 953; (3) that the agency's "reliance on [Global's] contribution margin approach" was unreasonable, id. at 957; (4) that the agency "failed to consider the risk that Global Dynamics would not be able to carry out its proposed technical approaches given its low direct and indirect rates," id.; (5) that the agency "improperly assigned Global Dynamics' proposal undeserved strengths," id.; and (6) that the agency's past performance adjectival rating as "substantial confidence was based, in part, on an erroneous assignment of adjectival ratings," id. at 962.  The GAO concluded that "[t]here is no basis for our Office to know what the source selection might have been had the errors not occurred."  Id. at 963.  It further found "a reasonable possibility that GiaMed was prejudiced by the agency's actions."  Id.

On December 30, 2016, MedCom undertook corrective action as a result of the GAO's analysis. See id. at 965-66. MedCom anticipated that a period of 120 days would be sufficient to comply with the GAO's recommendations. See id. at 965. MedCom advised the GAO that the corrective action was continuing as of May 11, 2017, and represented that it expected to complete the process within forty-five days. See id. at 974.

One hundred and seventeen days later, on September 5, 2017, MedCom stated its intention to award a fifth sole-source contract to MedTrust. See id. at 1004-15. In its justification and approval document (J&A) supporting this decision, MedCom stated: "The Government has awarded a follow contract . . . [to plaintiff]; however due to Government Accountability Office (GAO) protests on the follow-on RN contract, it is necessary to award a bridge contract to ensure continuity of services until the Contracting Officer completely resolves the protest." See id. at 1007.

MedCom then decided to cancel the solicitation on November 2, 2017. See ECF No. 48-10 at 397-98. The first count of the complaint addresses plaintiff's challenge to this cancellation, see ECF No. 1 at 17, but defendant has since rescinded the cancellation, see ECF No. 49 (notifying the court of MedCom's rescission). In its motion to dismiss, defendant claims that this rescission renders the first count of plaintiff's complaint moot, see ECF No. 51 at 27-28, and plaintiff agrees, see ECF No. 54 at 7.

II.    Legal Standards

The Tucker Act grants this court jurisdiction

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2012).

The court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). First, the court determines, pursuant to the Administrative Procedure Act's standard of review, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907-08 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4)). An agency's decision meets this standard when the agency "entirely failed to consider an important aspect of

the problem, offered an explanation for its decision that runs counter to the evidence before the agency or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  In making this evaluation, the court considers "whether the agency has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) (citations omitted).

If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial.  See Bannum, 404 F.3d at 1351.  To establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).  "In other words, the protestor's chance of securing the award must not have been insubstantial." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).  As the Supreme Court has explained, the scope of review under the "arbitrary and capricious" standard is narrow.  See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974).  "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,'" and "'[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine Inc. v. United States, 575 F.3d 1352, 1368-69 (Fed. Cir. 2009) (stating that under highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

This broad discretion extends to agency decisions to take corrective action.  See Jacobs Tech. Inc. v. United States, 100 Fed. Cl. 186, 190-91 (2011).  As the United States Court of Appeals for the Federal Circuit has held, an agency's decision to follow the GAO's recommendation is rational if the court determines that the GAO's recommendation was itself rational.  See Honeywell v. United States, 870 F.2d 644, 647 (Fed. Cir. 1989).

III.     Analysis

A.      Motion to Dismiss Count I

In the first count of its complaint, plaintiff alleges that MedCom's "decision to set aside its award to Global and cancel the competition is arbitrary, capricious, and lacks a

6

rational basis." ECF No. 1 at 17.  After plaintiff filed the complaint, defendant filed a notice informing the court that MedCom decided to rescind the cancellation to which plaintiff objects, and to continue with the previously scheduled corrective action.  See ECF No. 49.  Defendant then moved the court to dismiss the first count of plaintiff's complaint as moot.  See ECF No. 51 at 27.  Plaintiff agrees that defendant's rescission renders moot the first count in its complaint.  See ECF No. 54 at 7.  Because the issue raised by the first count in plaintiff's complaint no longer involves a live case or controversy, the court dismisses it for lack of subject matter jurisdiction, pursuant to Rule 12(h)(3) of the Rules of the Court of Federal Claims (RCFC).  See NEC Corp. v. United States, 151 F.3d 1361, 1369 (Fed. Cir. 1998) ("If a case becomes moot it no longer presents a justiciable controversy over which a federal court may exercise jurisdiction."); Chapman Law Firm Co. v. United States, 490 F.3d 934, 939 (Fed. Cir. 2007) ("When, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed.").

> B.      MedCom's Decision to Award a Fifth Sole-Source Bridge Contract

In its motion, plaintiff contends that MedCom's "fifth sole source bridge contract to MedTrust is improper and prejudicial." ECF No. 43-1 at 35.  The circumstances under which the government is permitted to award contracts outside of the competitive process is governed here by 10 U.S.C. § 2304 (2012).  The statute identifies seven circumstances in which such contracts are permissible, two of which plaintiff asserts are implicated in this case.  The two relevant provisions state:

> The head of an agency may use procedures other than competitive procedures only when—
>
> (1)      the property or services needed by the agency are available from only one responsible source or only from a limited number of responsible sources and no other type of property or services will satisfy the needs of the agency;
>
> (2)      the agency's need for the property or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals . . . .

10 U.S.C. § 2304(c)(1)-(2).  Plaintiff argues that defendant's decision to award a sole-source bridge contract in September 2017 fails to meet the standard set forth in either of these provisions.  See ECF No. 43-1 at 35-40.  Defendant states that it specifically relied on the first of the provisions, 10 U.S.C. § 2304(c)(1), in making the fifth award to MedTrust.  See ECF No. 51 at 41; ECF No. 48-9 at 1004.  The court, in turn, will accordingly limit its review of defendant's decision to consider whether it meets the

requirements for awarding a contract outside of the competitive process for the reason that "only one responsible source" and "no other type of . . . services" would meet defendant's need. See 10 U.S.C. § 2304(c)(1).

The Federal Circuit has instructed that a sole-source contract may be set aside if: "(1) the sole-source award lacked a rational basis; or (2) the sole-source procurement procedure involved a violation of a statute, regulation, or procedure." Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  In evaluating the propriety of a sole-source contract award, the court must "determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." Impresa, 238 F.3d at 1333 (citation omitted). As this court has observed, "sole-source procurements may not be used when the circumstances justifying the award were due to the agency's own lack of advanced planning." Innovation Dev. Enterprises of Am., Inc. v. United States, 108 Fed. Cl. 711, 728 (2013) (holding that the "[f]ailure to account for transition periods between an incumbent contractor and a new contractor is . . .  a form of lack of advanced planning"); 10 U.S.C. § 2304(f)(4)(A) ("In no case may the head of an agency . . . enter into a contract for property or services using procedures other than competitive procedures on the basis of the lack of advanced planning."); 48 C.F.R. § 6.301(c)(1) (2017) ("Contracting without providing for full and open competition shall not be justified on the basis of a lack of advanced planning by the requiring activity.").

Plaintiff contends that defendant's fifth sole-source award was improper because: (1) the agency had found "many firms . . . capable of delivering these precise services," and that "numerous offerors have identified their capability and willingness to take on the work," ECF No. 43-1 at 36; (2) defendant failed to appropriately plan for a transition of services from MedTrust to another awardee, see id.; and (3) defendant's representation in the J&A supporting the award, that it was "necessary to award a bridge contract to ensure the continuity of services until the Contracting Officer completely resolves the protest," was disingenuous, because at the time the statement was made the agency intended to cancel the solicitation, id. at 37.

In the J&A, dated September 5, 2017, defendant grounds its decision to award the fifth sole-source contract to incumbent MedTrust on three bases.  First, defendant states that it considered twenty possible service providers, but found that "no other business concern can perform these short term services."  ECF No. 48-9 at 1009.  Defendant's reasoning essentially amounts to a determination that as of September 5, 2017, there was not sufficient time to transfer responsibilities to a new company before the current bridge contract expired on September 30, 2017.  It stated that "a successor contractor would need to recruit and present a bona fide express offer of employment to qualified workers performing under the existing contract," a process that would require almost two months to complete.  Id. at 1007.  As such, the agency determined that "there is not a sufficient

amount of time for the Government to conduct a competitive acquisition and award a contract in time for the contract to be able to meet the Government's requirement." Id. at 1008.  MedCom then concluded that "[o]nly MedTrust LLC possesses the unique qualifications to instantly perform the continuation of these services given that only MedTrust LLC already has the required resources, trained manpower, and has completed all in-processing requirements for their employees."  Id.

Second, defendant argues that, "although MedCom acknowledges that it has also contributed to delays in conducting its corrective action and that it has not done enough to ensure timely action," the time spent on the latest corrective action is not excessive. ECF No. 51 at 43.  Defendant specifically bases this judgment on its assertion that the time "spent on the latest corrective action is consistent with MedCom's previous corrective action evaluations," about which plaintiff has not previously complained.  Id.

And third, defendant emphasizes the fact that plaintiff is only challenging the fifth, most recent, sole-source bridge contract award, stating that "five years' worth of bridge contracts are not at issue in this case.  Global has chosen not to challenge the previous bridge contracts and only now challenges the agency's decision."  Id. (emphasis in original).  At the same time, defendant complains that in arguing that defendant failed to properly plan for a transition from the incumbent in violation of 10 U.S.C. § 2304(f)(4), plaintiff "completely ignores the delays necessary due to the protracted litigation in this case."  ECF No. 51 at 46.  Defendant points out that plaintiff's complaint challenges only the fifth sole-source award.  See ECF No. 1 at 20-23.  The court, however, reads any discussion of the previous sole-source awards as background to the current state of play, and will not permit either party to exploit the history of this case beyond what is directly relevant to the claims at bar.

MedCom's acknowledgement that it has not timely conducted its corrective action gets to the root of the problem in this case.  As outlined above, MedCom undertook the most recent corrective action on December 30, 2016.  See ECF No. 48-9 at 965-66. MedCom's initial estimate was that 120 days would be sufficient to complete the correction.  See id. at 965.  One hundred and twenty days from December 30, 2016, was April 29, 2017.  The corrective action was not completed by that date.  In fact, MedCom notified the GAO that the action was continuing as of May 11, 2017, and further represented that it expected to complete the process within forty-five days.  See id. at 974-75.  Forty-five days from May 11, 2017, was June 25, 2017.  The corrective action was, however, still ongoing 117 days later when MedCom stated its intention to award MedTrust a fifth sole-source bridge contract, on September 5, 2017.  See id. at 1006.

None of the parties involved in this case have identified any place in the voluminous administrative record where MedCom purports to explain why these delays extended so far beyond even its own estimates.  Nor have the parties identified any intervening developments or obstacles that arose to account for the originally estimated

120 days increasing to more than 250 days, with still no result.  As plaintiff points out, "no party filed any litigation of any kind between the Army between . . . November 2, 2016 when GAO sustained GiaMed's protest and MEDCOM's November 2, 2017 Solicitation cancellation."  ECF No. 54 at 18 (emphasis omitted).  In its reply, defendant provides a timeline of its actions, see ECF No. 59 at 19, but still provides no reason for the unexpectedly protracted process.  In fact, defendant admits that it could have accomplished the corrective action more quickly than it did.  See id. ("Could MedCom have conducted the corrective action in less time?  Yes.").

Plaintiff may be correct that the delay resulted from an impermissible lack of advanced planning on defendant's part.  Defendant justified the award of a sole-source bridge contract on the basis that it does not have enough time to make a competitive award, stating that only MedTrust "possesses the unique qualifications to instantly perform the continuation of these services given that only MedTrust LLC already has the required resources, trained manpower, and has completed all in-processing requirements for their employees; thus requiring no transition efforts to continue performing these services."  ECF No. 48-9 at 1008.   But even assuming there is a good explanation for the delayed corrective action, defendant knew for at least one year that the sole-source contract was going to expire on September 30, 2017.  Moreover, while defendant acknowledges it "contributed to delays in conducting its corrective action and that it has not done enough to ensure timely action," ECF No. 51 at 43, it fails to offer any explanation for the delay.  Because the agency's statement elides this critical discussion, the record before the court does not provide the facts necessary for the court to determine whether the fifth sole-source award had a rational basis and complied with all pertinent statutes, regulations, and procedures.

As such, the court will remand this matter to the agency for the purpose of identifying any additional facts that may have been omitted from the J&A, and informing the court of the basis for the extraordinary and unexpected delays as discussed herein. The court notes that it seeks only facts that were contemporaneous to the corrective action and fifth sole-source award, and will not countenance post hoc rationalizations for the decision.

C.     MedCom's Decision to Follow the GAO's Recommendation

Plaintiff also argues that MedCom's decision to follow the GAO's recommendation in GiaCare and MedTrust JV, LLC, B-407966.4, 2016 CPD ¶ 321 (Comp. Gen. Nov. 2, 2016), was irrational because the GAO's recommendation was itself irrational.  See ECF No. 43-1 at 40.  See Honeywell, 870 F.2d at 647 (holding that an agency's decision to follow the GAO's recommendation is rational if the court determines that the GAO's recommendation was itself rational).  In its GAO protest, GiaMed alleged a number of errors in MedCom's June 2016 decision to award the contract to plaintiff.  The GAO summarized the arguments with merit as follows:

GiaMed raises a number of allegations in its protest. First, GiaMed challenges the Army's price realism analysis, alleging that the awardee proposed unrealistically low direct and indirect rates. Second, GiaMed challenges the Army's technical evaluation, contending that the Army failed to consider the risk that Global Dynamics would not be able to deliver on its proposed technical approaches given its low direct and indirect rates and also that the Army improperly assigned Global Dynamics' proposal undeserved strengths. Third, GiaMed challenges the Army's past performance evaluation, claiming that the Army unreasonably overlooked Global Dynamics' lack of experience and, instead, improperly credited Global Dynamics with the experience of its subcontractor. Fourth, GiaMed alleges that the awardee misrepresented the availability of key personnel and, thus, the Army should reject its proposal. Fifth, GiaMed contends that the Army erroneously concluded that Global Dynamics met the solicitation's requirement to demonstrate financial capability. Sixth, GiaMed expresses dissatisfaction with the Army's evaluation of GiaMed's technical proposal and contends that the Army unequally evaluated offerors' proposals. Finally, GiaMed alleges that the Army's source selection decision is flawed.

ECF No. 48-9 at 948. The GAO sustained the protest on each of these grounds. See id. at 951-62. It further found "a reasonable possibility that GiaMed was prejudiced by the agency's actions." Id. at 963.

In the instant action, plaintiff claims that the GAO "exceeded its role as to each of the sustained issues." ECF No. 43-1 at 43. Specifically, plaintiff argues that the GAO impermissibly substituted its own judgment for that of the agency, see id. at 42-47; and failed to appropriately analyze prejudice to the protestor, see id. at 47-51.

Defendant claims that the doctrine of laches prohibits plaintiff from challenging the GAO's decision. The doctrine of laches "bars a claim when a plaintiff's neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party." Nat'l Telecommuting Inst., Inc. v. United States, 123 Fed. Cl. 595, 602 (2015) (citations omitted); see also JANA, Inc. v. United States, 936 F.2d 1265, 1269-70 (Fed. Cir. 1991) (stating that "[t]he defense of laches requires a showing of two things: (1) unreasonable and unexcused delay by the claimant, and (2) prejudice to the other party . . ."). Defendant bears the burden of proving the elements of the defense. See Nat'l Telecommuting, 123 Fed. Cl. at 602. The Federal Circuit has recognized laches as an available defense in the bid protest context. See Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1314-15 (Fed. Cir. 2007) (collecting cases noting the use of laches in bid protests); Software Testing Sols., Inc. v. United States, 58 Fed. Cl. 533, 535-36 (2003) (stating that delay may be "considered in the multi-factored analysis of whether

injunctive relief is warranted" or in "the application of equitable doctrines such as laches").

Plaintiff argues, in response, that the doctrine of laches is unavailable here. Plaintiff reasons that the court treats challenges to agency corrective action as it does pre-award protests, and the doctrine of waiver, rather than the doctrine of laches, applies for purposes of evaluating timeliness in the pre-award context. See ECF No. 54 at 25. Laches cannot, therefore, apply in this case. See id. The court agrees that challenges to agency corrective action are treated as pre-award protests. See Sys. Applic. & Techs., Inc. v. United States, 691 F.3d 1374, 1382 (Fed. Cir. 2012); Square One Armoring Serv., Inc. v. United States, 123 Fed. Cl. 309, 327 (2015) (collecting cases). The court, however, does not find persuasive plaintiff's contention that the doctrine of waiver—but not the doctrine of laches—applies in the pre-award context.

According to plaintiff, "when corrective action involves withdrawing a contract award and reopening the competition, the Blue & Gold timeliness rule for pre-award protests governs the action and the protester must file such protest prior to the reopened procurement proposal due date or new award decision, whichever is earlier." ECF No. 54 at 25. In Blue & Gold, the Federal Circuit reviewed a number of equitable doctrines, including laches, but its specific holding in the case was based on waiver. The Court held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection afterwards in a § 1491(b) action in the Court of Federal Claims." Blue & Gold, 492 F.3d at 1315. Plaintiff's argument improperly conflates the concepts of waiver and laches. Its contention that the waiver rule applied in Blue & Gold is the only timeliness rule that can be applied in the pre-award context overstates the holding of that case.

Laches is not a commonly used defense in pre-award bid protests, but this court has, in at least one instance, analyzed the defense in the pre-award context. Mississippi Department of Rehabilitation Services v. United States, 61 Fed. Cl. 20 (2004), involved a solicitation for a food service contract at a Naval Air Station. In that case, the plaintiff submitted its bid on August 18, 2003, the day before offers were due. See id. at 24. On August 29, 2003, the contracting officer informed the plaintiff that its bid would not be evaluated. See id. The plaintiff filed its pre-award protest four days later, on September 3, 2003. See id. As part of its defense to the protest action, the government argued that the plaintiff's four-day delay in filing a complaint after the contracting officer disqualified its proposal implicated the doctrine of laches. See id. at 30-31.

The court examined the contours and applicability of the doctrine of laches at length in its opinion. See id. After reviewing the elements of a laches defense and the principle behind it, the court discussed the circumstances in which the defense is appropriately raised. It stated:

> Because laches is an equitable defense, in actions of law "[w]hen a limitation
> on the period for bringing suit has been set by statute, laches will generally
> not be invoked to shorten the statutory period." Advanced Cardiovascular
> Sys. v. SciMed Life Sys., 988 F.2d 1157, 1161 (Fed. Cir. 1993). The Tucker
> Act, which grants this Court's bid protest jurisdiction, does not limit the time
> in which a bid protest may be brought, allowing suits to be brought both
> before and after the award of a contract. 28 U.S.C. § 1491(b). Against a
> backdrop that disfavors the shortening of time limits prescribed by Congress,
> we examine the contention that [plaintiff] unreasonably delayed bringing this
> suit.

Id. at 30. The court raised no question as to whether the defense was or should be limited
to the post-award context. The court ultimately determined that the facts at bar did not
involve the requisite undue delay or prejudice to invoke laches, and rejected the defense
on the merits. See id. at 31.

A careful review of the available authority and the analysis in Mississippi
Department of Rehabilitation Services does not furnish the court with a reason to cabin
the use of laches in the bid protest context to post-award actions. That is not to say that
laches may be invoked casually—as defendant still must carry its burden to demonstrate:
"(1) unreasonable and unexcused delay by the claimant, and (2) prejudice to the other
party . . . ." JANA, 936 F.2d at 1269-70. "The general rule is that laches is an equitable
doctrine that must be considered in light of the facts of each case." Cornetta v. United
States, 851 F.2d 1372, 1379 (Fed. Cir. 1988). There "are no predetermined exact
boundaries to the length of time that are considered unreasonable by the courts and
sufficient to support a laches defense." Mexican Intermodal Equip., S.A. de C.V. v.
United States, 61 Fed. Cl. 55, 71 (2004). "When applying the doctrine of laches in order
to bar a claim, the period of delay is measured from when the claimant had actual notice
of the claim or would have reasonably been expected to inquire about the subject matter."
Advanced Cardiovascular, 988 F.2d at 1161.

The GAO issued the decision now challenged by plaintiff on November 2, 2016.
See ECF No. 48-9 at 941-63. On December 30, 2016, MedCom undertook corrective
action as a result of the GAO's analysis. See id. at 965-66. Thus, plaintiff was on notice
of the GAO's decision and the agency's intent to act on the GAO's recommendation for
nearly one year before filing the instant action. See ECF No. 1 (filed on December 14,
2017). In order to avoid the operation of laches, plaintiff's delay must be reasonable and
excused. The record here demonstrates, by plaintiff's own admission, that its delay was
neither. In the complaint, plaintiff states:

> Global respects GAO's critical role in the procurement process and, indeed
> initially   intended   to   accept   GAO's   November   2016   decision,

13

> notwithstanding that Global disagreed with the decision. But contrary to the Army's representations to GAO, the Army has not undertaken the corrective action and instead now seeks to cancel this procurement. With litigation required and no further delay warranted, Global necessarily challenges GAO's decision and the Army's purported reliance on it.

ECF No. 1 at 25. This statement exposes the disingenuous nature of plaintiff's challenge to the GAO decision. Plaintiff admits it had no intention of challenging the decision before the agency failed to complete the corrective action in a timely manner, and made the subsequent decision to cancel the procurement altogether.

Furthermore, in response to defendant's assertion of a laches defense, plaintiff makes no attempt to explain the lapse in time. Plaintiff, instead, continues to conflate its delay in challenging the GAO decision with its objection to the agency's delay in accomplishing the corrective action. It argues:

> [L]aches is an equitable principle. The Agency must have clean hands to raise it. But the Agency is the cause of the very delay on which it seeks to rely. The Agency twice represented to GAO and Global that the Agency was diligently pursuing its corrective action despite [the fact] that the Agency was not doing so.

ECF No. 54 at 27. But the "delay on which the [agency] seeks to rely" is not the delayed corrective action. Rather, defendant's laches argument is explicitly based on its complaint that plaintiff "waited nearly a year to challenge MedCom's decision to implement corrective action following the 2016 GAO decision." ECF No. 51 at 28. Plaintiff goes even further, declaring that this action only exists "because the Agency never took the corrective action and instead attempted to cancel the Solicitation and award MedTrust still further sole source awards." ECF No. 54 at 27. As such, plaintiff has offered no passable explanation to justify its delay in challenging the GAO's recommendation.

In addition to finding that plaintiff's delay was unexcused, it was also unreasonable. Given the long, involved history of this case, plaintiff should have been positioned to object with all deliberate speed to the agency's chosen course. By its own admission, plaintiff affirmatively decided not to challenge the decision until another related, but independent problem arose, in the form of the agency's cancellation of the procurement. It is true, as defendant points out, that the year-long delay far exceeds the delays that this court has previously found unreasonable in the context of a laches defense. See Software Testing Sols., 58 Fed. Cl. at 536 (holding that a two-month delay created a "strong argument in favor of applying laches"); Nat'l Telecommuting 123 Fed. Cl. at 602 (applying laches to bar a claim after a six-month delay). More than the ticking

off of a particular number of days, however, the court finds plaintiff's opportunistic reversal on the issue unreasonable.

Even given an unexcused and unreasonable delay, laches will not apply unless that delay results in prejudice to defendant, "either economic prejudice or defense prejudice." JANA, 936 F.2d at 1269.  In this case, defendant alleges economic prejudice, which can be established by showing "the loss of monetary investments or incurred damages that likely would have been prevented by earlier suit."  ECF No. 51 at 31 (citing Software Testing Sols., 58 Fed. Cl. at 536; A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1033 (Fed. Cir. 1992)).  According to defendant, had plaintiff objected to the GAO's decision in a timely fashion, it would not have spent its resources to implement the recommendation.  See ECF No. 51 at 31.  Specifically, defendant would not have reconvened the technical evaluation panel, which completed its re-evaluation of plaintiff's proposal on May 31, 2017, nor would it have re-evaluated plaintiff's past performance, a task it completed on July 10, 2017.  See id. (citing ECF No. 48-9 at 976-997).  Plaintiff's only defense to defendant's charge of prejudice is its assertion that the agency was not prejudiced because it "has not even performed the first step in its corrective action plan."  ECF No. 54 at 27.  This statement is plainly contradicted by the record evidence cited by defendant to demonstrate that re-evaluations were completed in May and July.

The court agrees that defendant suffered as a result of plaintiff's failure to timely assert its rights.  If plaintiff's challenges to the GAO's recommendation are meritorious, as it now enthusiastically claims they are, defendant would not have taken steps to implement the recommendation.  Reconvening the evaluation panel and re-evaluating both the technical and past performance aspects of proposals amount to a considerable—and potentially wasted—expenditure of resources on the part of the agency and its employees.  Furthermore, had the GAO's recommendations been reversed and plaintiff's positions sustained, the agency would presumably have moved forward with the award to plaintiff, obviating the need for the bridge contract that has been an additional source of friction in this case.

The court concludes that the unique circumstances of this case justify the application of the doctrine of laches to bar plaintiff's challenge to the GAO's November 2, 2016 decision.

IV.    Conclusion

For the foregoing reasons:

(1)    As to Count I, defendant's motion to dismiss, ECF No. 51, is **GRANTED**. Pursuant to RCFC 54(b), insofar as there is no just reason for delay, the clerk's office is

directed to **ENTER** final judgment **DISMISSING** Count I of plaintiff's complaint without prejudice;

(2)      As to Count II, pursuant to 28 U.S.C. § 1491(a)(2) (2012) and RCFC 52.2(b), this matter is **REMANDED** for **thirty days** to the United States Department of the Army:

(a)      This protest is remanded to the agency for the purpose of identifying any further available facts underlying its decision to award a fifth sole-source contract, in accordance with the analysis in this opinion;

(b)      The initial thirty day period of remand may be extended upon timely request to the court by the United States Department of Justice, in which defendant must note the position of plaintiff and intervenor-defendants as to the requested extension;

(c)      All proceedings in the subject matter are **STAYED** pending further order of the court;

(d)      The parties shall **FILE** a **Joint Status Report** within **three days** following the conclusion of the remand proceedings that sets forth the parties' positions regarding whether further litigation is necessary, and, if so, a proposed date for defendant to file the administrative record associated with the remand proceedings, and a proposed briefing schedule on the merits for the court's consideration; and

(e)      The clerk's office shall **SERVE** a **certified copy** of **this remand order**, in accordance with RCFC 5 upon each party, and upon:

United States Army Legal Services Agency
Attention:  Evan Williams
9275 Gunston Road, Suite 2140
Ft. Belvoir, Virginia  22060-5546

(3)      As to Count III, plaintiff's motion for judgment on the administrative record, ECF No. 43, is **DENIED**; defendant's cross motion for judgment on the administrative record, ECF No. 51, is **GRANTED**; intervenor-defendants' cross motion for judgment on the administrative record is **DENIED**.[2]  Pursuant to RCFC 54(b), insofar

---

[2]      The court notes that it has denied the intervenor-defendants' cross-motion as to the third count of the complaint because they did not raise the dispositive issue of laches.

as there is no just reason for delay, the clerk's office is directed to **ENTER** final judgment **DISMISSING** Count III of plaintiff's complaint with prejudice; and

(4)    On or before **March 14, 2018**, the parties shall **CONFER** and **FILE** a **Joint Proposed Redacted Version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out and enclosed in brackets.


IT IS SO ORDERED.

                                              s/Patricia Campbell-Smith
                                              PATRICIA CAMPBELL-SMITH
                                              Judge