# In the United States Court of Federal Claims

No. 17-1875C

(E-Filed: May 1, 2018)[1]

|  |  |  |
|---|---|---|
| GLOBAL DYNAMICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | Bid Protest; Sole-Source Bridge |
| | ) | Contract; 10 U.S.C. § 2304(c)(1) |
| and | ) | (2012). |
| | ) | |
| GIACARE and MEDTRUST JV, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MEDTRUST, LLC, | ) | |
| | ) | |
| Intervenor-defendants. | ) | |
| | ) | |

Craig A. Holman, Washington, DC, for plaintiff.  Michael E. Samuels and Alexandra L. Barbee-Garret, of counsel.

Tanya B. Koenig, Trial Attorney, with whom appeared Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United

---

[1] This opinion was issued under seal on April 25, 2018.  Pursuant to the ordering language of the court's opinion, the parties were invited to identify source selection, proprietary, or confidential material subject to deletion on the basis that the material was protected/privileged.  No redactions were proposed by the parties.  Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

States Department of Justice, Washington, DC, for defendant.  Jessica E. Hom and Evan C. Williams, United States Army Legal Services Agency, of counsel.  John T. Harryman and Eugene J. Smith, United States Army Medical Command, of counsel.

Jacqueline K. Unger, Washington, DC, for intervenor-defendants.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

This bid protest involves a dispute related to the award of a contract for registered nursing (RN) services for the San Antonio Military Healthcare System (SAMHS).  See ECF No. 1 at 7-8 (complaint).  On February 27, 2018, the court issued an opinion and order in which it ruled on two of the three counts that plaintiff alleges in the complaint.  See ECF No. 61.  The court remanded the matter to the United States Department of the Army (agency) for additional development of the factual record with regard to the second, and only remaining, count.  See id.  The agency has now completed remand proceedings, and the parties have submitted supplemental briefs to address its findings.  See ECF No. 74 (plaintiff's supplemental brief); ECF No. 75 (intervenor-defendants' supplemental brief); ECF No. 76 (defendant's supplemental brief).

For the following reasons, as to the second count in the complaint, plaintiff's motion for judgment on the administrative record, ECF No. 43, is **GRANTED**; intervenor-defendants' cross-motion for judgment on the administrative record, ECF No. 50, is **DENIED**; and, defendant's cross-motion for judgment on the administrative record, ECF No. 51, is **DENIED**.

I.  Background

The court recounted the detailed history of this case in its previous opinion.  Given the narrower scope of this post-remand opinion, the court will address only the facts necessary to evaluating the second count of the complaint.

The relevant solicitation was first issued by the United States Army Medical Command (MedCom) on September 14, 2012, as a small-business set aside.  See ECF No. 47-1 at 774-886.  Plaintiff submitted its initial proposal on October 16, 2012.  See ECF No. 47-2 at 1-241.  As a result of a myriad of protest actions challenging agency decisions related to the solicitation, defendant has issued five sole-source awards to incumbent contractor MedTrust, LLC.  See ECF No. 61 at 2-5.  Only the fifth sole-source award is challenged in the present litigation.  See ECF No. 1 at 20-23.

On December 30, 2016, MedCom undertook corrective action as a result of the Government Accountability Office's (GAO) decision in one of the protest actions.  See

2

---

ECF No. 48-9 at 965-66.  MedCom anticipated that a period of 120 days would be sufficient to comply with the GAO's recommendations.  See id. at 965.  The agency later advised the GAO that the corrective action was continuing as of May 11, 2017, and represented that it expected to complete the process within forty-five days.  See id. at 974-75.

One hundred and seventeen days later, on September 5, 2017, MedCom stated its intention to award a fifth sole-source contract to MedTrust.  See id. at 1004-15.  In its justification and approval document (J&A) supporting this decision, MedCom stated: "The Government has awarded a follow contract . . . [to plaintiff]; however due to Government Accountability Office (GAO) protests on the follow-on RN contract, it is necessary to award a bridge contract to ensure continuity of services until the Contracting Officer completely resolves the protest."  See id. at 1007.

In its order remanding this matter to the agency, the court stated:  "[t]his protest is remanded to the agency for the purpose of identifying any further available facts underlying its decision to award a fifth sole-source contract, in accordance with the analysis in this opinion."  ECF No. 61 at 16.  The agency responded by filing a memorandum for the record providing the requested facts, and attaching supporting exhibits.  See ECF No. 73-1.

The memorandum provides a detailed timeline of the agency's actions between November 2, 2016, when the GAO issued its protest decision, and September 14, 2017, when the agency approved the fifth sole-source contract.  See id. at 4-6.  Defendant, in turn, offers three primary reasons for the delay in completing the corrective action.  First, defendant explains that several unexpected matters arose during the period in which it was working on the corrective action that interfered with its ability to allocate resources to the effort.  The agency's memorandum identifies three "unexpected contract actions [that] required immediate attention," during the pendency of the corrective action, specifically:  (1) a Department of Labor wage determination proceeding; (2) resolution of an agency protest; and (3) the solicitation and award of an interim award, also relating to nursing services.  Id. at 3.  In its supplemental brief, defendant also notes a fourth matter, stating that the contracting officer was further "delayed in working on the corrective action . . . due to a large dental services acquisition."  ECF No. 76 at 7.

Second, defendant asserts that "because of three retirements, the Health Readiness Contract Office responsible for processing these procurements had only one contracting officer available to work on the corrective action as well as other routine and unplanned contract actions."  Id. at 7.  According to defendant, the office is "normally staffed by five contracting officers."  Id.  Defendant does not explain the fate of the fifth contracting officer.

And finally, defendant highlights the fact that on July 13, 2017, the contracting officer received "unofficial notification that the requirement for Registered Nurses (RN) may increase." Id. at 8. These changes required additional work on cost estimates, which was requested on August 17, 2017. See id. Shortly thereafter, the agency determined that a fifth sole-source contract was necessary. See ECF No. 48-9 at 1007.

II.     Legal Standards

The Tucker Act grants this court jurisdiction

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2012).

The court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). First, the court determines, pursuant to the Administrative Procedure Act's standard of review, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907-08 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4)). An agency's decision is improper when the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). In making this evaluation, the court considers "whether the agency has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) (citations omitted).

If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351. To establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). "In other words, the protestor's chance of securing the award must not have been insubstantial." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

And finally, defendant highlights the fact that on July 13, 2017, the contracting officer received "unofficial notification that the requirement for Registered Nurses (RN) may increase." Id. at 8. These changes required additional work on cost estimates, which was requested on August 17, 2017. See id. Shortly thereafter, the agency determined that a fifth sole-source contract was necessary. See ECF No. 48-9 at 1007.

II.     Legal Standards

The Tucker Act grants this court jurisdiction

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement . . . without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (2012).

The court's analysis of a "bid protest proceeds in two steps." Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). First, the court determines, pursuant to the Administrative Procedure Act's standard of review, whether the "agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907-08 (Fed. Cir. 2013) (citing 28 U.S.C. § 1491(b)(4)). An agency's decision is improper when the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). In making this evaluation, the court considers "whether the agency has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) (citations omitted).

If the court finds that the agency acted in error, the court then must determine whether the error was prejudicial. See Bannum, 404 F.3d at 1351. To establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error.'" Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (quoting Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996)). "In other words, the protestor's chance of securing the award must not have been insubstantial." Info. Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

Given the considerable discretion allowed contracting officers, the standard of review is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As the Supreme Court has explained, the scope of review under the "arbitrary and capricious" standard is narrow. See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974). "A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment,'" and "'[t]he court is not empowered to substitute its judgment for that of the agency.'" Id. (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)); see also Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1368-69 (Fed. Cir. 2009) (stating that under highly deferential rational basis review, the court will "sustain an agency action 'evincing rational reasoning and consideration of relevant factors'") (citing Advanced Data Concepts, 216 F.3d at 1058).

III.   Analysis

For ease of reference, the court will reiterate the relevant portion of its previously issued analysis relating to MedCom's award of a fifth sole-source contract, which is the subject of the second count of the complaint. In its motion for judgment on the administrative record, plaintiff contends that MedCom's "fifth sole source bridge contract to MedTrust is improper and prejudicial." ECF No. 43-1 at 35. The circumstances under which the government is permitted to award contracts outside of the competitive process is governed here by 10 U.S.C. § 2304 (2012). The statute identifies seven circumstances in which such contracts are permissible, two of which plaintiff asserts are implicated in this case. The two relevant provisions state:

> The head of an agency may use procedures other than competitive procedures only when—
>
> (1)   the property or services needed by the agency are available from only one responsible source or only from a limited number of responsible sources and no other type of property or services will satisfy the needs of the agency;
>
> (2)   the agency's need for the property or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals[.]

10 U.S.C. § 2304(c)(1)-(2). Plaintiff argues that defendant's decision to award a sole-source bridge contract in September 2017 fails to meet either standard set forth in these provisions. See ECF No. 43-1 at 35-40. Defendant states that it specifically relied on the first of the provisions, 10 U.S.C. § 2304(c)(1), in making the fifth award to MedTrust. See ECF No. 51 at 41; ECF No. 48-9 at 1004. The court, in turn, will accordingly limit

5

its review of defendant's decision to consider whether it meets the requirements for awarding a contract outside of the competitive process for the reason that "only one responsible source" and "no other type of . . . services" would meet defendant's needs. See 10 U.S.C. § 2304(c)(1).

The Federal Circuit has instructed that a sole-source contract may be set aside if: "(1) the sole-source award lacked a rational basis; or (2) the sole-source procurement procedure involved a violation of a statute, regulation, or procedure." Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). In evaluating the propriety of a sole-source contract award, the court must "determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." Impresa, 238 F.3d at 1333 (citation omitted). As this court has observed, "sole-source procurements may not be used when the circumstances justifying the award were due to the agency's own lack of advanced planning." Innovation Dev. Enters. of Am., Inc. v. United States, 108 Fed. Cl. 711, 727-28 (2013) (holding that the "[f]ailure to account for transition periods between an incumbent contractor and a new contractor is . . . [a] form of lack of advanced planning"); 10 U.S.C. § 2304(f)(4)(A) ("In no case may the head of an agency . . . enter into a contract for property or services using procedures other than competitive procedures on the basis of the lack of advanced planning."); 48 C.F.R. § 6.301(c)(1) (2017) ("Contracting without providing for full and open competition shall not be justified on the basis of . . . a lack of advanced planning by the requiring activity.").

The court's February 27, 2018 order remanding this matter to the agency was founded on the court's conclusion that defendant had not adequately explained the delay in completing the corrective action. As the court previously observed:

> MedCom's acknowledgement that it has not timely conducted its corrective action gets to the root of the problem in this case. As outlined above, MedCom undertook the most recent corrective action on December 30, 2016. See ECF No. 48-9 at 965-66. MedCom's initial estimate was that 120 days would be sufficient to complete the correction. See id. at 965. One hundred and twenty days from December 30, 2016, was April 29, 2017. The corrective action was not completed by that date. In fact, MedCom notified the GAO that the action was continuing as of May 11, 2017, and further represented that it expected to complete the process within forty-five days. See id. at 974-75. Forty-five days from May 11, 2017, was June 25, 2017. The corrective action was, however, still ongoing 117 days later when MedCom stated its intention to award MedTrust a fifth sole-source bridge contract, on September 5, 2017. See id. at 1006.

6

> None of the parties involved in this case have identified any place in the voluminous administrative record where MedCom purports to explain why these delays extended so far beyond even its own estimates.  Nor have the parties identified any intervening developments or obstacles that arose to account for the originally estimated 120 days increasing to more than 250 days, with still no result.

ECF No. 61 at 9.

In its supplemental brief, defendant argues that the agency's decision to award a fifth sole-source contract was rational because there were three good reasons for its delay in completing the most recent corrective action:  (1) three retirements in the relevant agency department resulted in a personnel shortage; (2) available personnel were working on a number of other matters instead of the subject corrective action; and, (3) in July 2017, the expected value of the contract was significantly increased, requiring additional work.  See ECF No. 76 at 10.  See also ECF No. 73-1 at 3-7 (agency's memorandum).  In the court's view, these explanations are unpersuasive.

First, defendant fails to explain the circumstances of the three retirements that apparently resulted in a drastic reduction of available contracting officers.  The court has no reason to doubt either that three retirements, in fact, occurred, or that losing three of five contracting officers had a significant impact on the department's ability to complete its duties in a timely fashion.  Indeed, the court is itself painfully aware of the consequences of limited resources.  The problem, however, is that defendant gives the court no reason to believe that the retirements were sudden or unexpected.  There is also no indication that the agency was unable to fill the vacancies.  Moreover, the agency was presumably aware of the vacancies when it set the various deadlines it did for completing the corrective action.  In the post-remand administrative record, the agency representative simply states that the relevant department was typically "staffed by five Contracting Officers.  However, due to three retirements, there was only one Contracting Officer available to work the corrective action, as well as the other routine contract actions."  ECF No. 73-1 at 3.

Defendant's subtraction skills notwithstanding, in the court's view, the fact that three officers retired is not enough to excuse the agency's failure to ensure it was properly staffed.  As plaintiff notes in its supplemental brief, the GAO has sustained a protest in which the agency sought to justify a sole-source award on the basis of similar personnel issues.  See ECF No. 74 at 13 (citing Service Contractors, B-243236, 91-2 CPD ¶ 49, 1991 WL 135563 (Comp. Gen. July 12, 1991).  Service Contractors involved a sole-source contract award for grounds maintenance at properties for which the Department of Housing and Urban Development (HUD) was responsible.  In the protest action, in which the protestor alleged that a non-competitive award was improper, the agency alleged that "personnel turnover and inexperience" sufficiently explained the need

for a sole-source award.  Service Contractors, 1991 WL 135563, at *1.  The GAO disagreed, and held that the agency's defenses related to inadequate personnel "essentially recognize the lack of advance planning and merely provide an excuse based on the limitations of the agency procurement personnel."  Id. at *3.  The court agrees with this reasoning, and concludes based on the evidence in the record, that the agency's inadequate staffing was due to its failure to plan for staffing needs in the relevant department.

Defendant also claims that unexpected, unrelated matters required the agency's attention, contributing to the delay in completing the corrective action.  See ECF No. 76 at 10.  The agency's memorandum explaining the facts underlying the decision to award a fifth sole-source contract includes a list identifying three "unexpected contract actions [that] required immediate attention," during the pendency of the corrective action:  (1) a Department of Labor wage determination proceeding; (2) resolution of an agency protest; and (3) the solicitation and award of an interim award, also relating to nursing services.  See ECF No. 73-1 at 3.  In its supplemental brief, defendant also notes a fourth matter, stating that the contracting officer was further "delayed in working the corrective action . . . due to a large dental services acquisition."  ECF No. 76 at 7.

Again, the court has no reason to doubt the veracity of the agency's assertions that it spent its time on these other matters.  The court also recognizes that all business before the agency is important.  This recitation of the agency's time management, however, does not supply a justification for its failure to allocate adequate time to the corrective action at issue here.  The correspondence attached to the contracting officer's memorandum in the supplemental administrative record does not indicate that the other matters before the agency were especially urgent.  In other words, defendant does not explain why these other matters needed to be prioritized over resolving the issues relating to the contract for nursing services at SAMHS.  The absence of such an explanation is problematic, particularly given the numerous, self-imposed deadlines that the agency did not meet.

The court also notes that defendant's representation that the agency was simply unable to complete the corrective action due to personnel and workload constraints is at odds with its previous admission that the agency could have accomplished the corrective action more quickly.  See ECF No. 59 at 19 ("Could MedCom have conducted the corrective action in less time?  Yes.").

The final reason defendant offers to establish the rationality of the sole-source award is that "the initial notice of an increased requirement for RNs in July 2017, and the development of that number through August 2017, necessarily affected the corrective action because of its potential impact on the procurement."  ECF No. 76 at 10.  As the court previously explained, the agency's first self-imposed deadline for completing the corrective action was April 29, 2017, and was later moved to May 11, 2017, and finally was set at June 25, 2017.  See ECF No. 61 at 9.  Even by defendant's own version of

events, the agency failed to meet any of those deadlines well before it received any notice of an increase in the required number of nurses. As such, the need for additional nurses identified in July cannot serve to justify the agency's failures to act in April, May, or June.

Defendant offers no separate explanation of its failure to award a competitive bridge contract. The court finds the reasons offered with regard to the delayed corrective action no more persuasive in that context. In addition, the intervenor-defendants' arguments, see ECF No. 75, are largely in line with defendant's arguments, and therefore have not been separately addressed herein.

The court concludes, for the foregoing reasons, that the fifth sole-source award lacked a rational basis, and therefore, the agency's decision to make the award did not comport with the requirements for awarding a contract outside of the competitive process. See 10 U.S.C. § 2304(c)(1). The court also finds that plaintiff was prejudiced by the agency's error. In the long history of this procurement, plaintiff has been awarded the contract three times. See ECF No. 61 at 3-4. Thus, had the agency timely completed the corrective action and awarded the contract, there is good reason to believe plaintiff had a substantial chance of being the awardee. See Alfa Laval, 175 F.3d at 1367 (stating that in order to establish prejudice, "the protester must show 'that there was a substantial chance it would have received the contract award but for that error'") (quoting Statistica, 102 F.3d at 1582).

As a remedy for the improper award of the fifth sole-source contract, plaintiff asks that the court enjoin performance of the contract after June 30, 2018, and direct defendant to either complete the corrective action and transition the contract by that time, or award a competitive bridge contract. See ECF No. 74 at 24. In its supplemental brief, plaintiff does not address the factors for injunctive relief as they apply specifically to the second count of the complaint. Instead, it simply "reiterates its prior request for declaratory and permanent injunctive relief." Id. Given the changes in the posture of this case from the time plaintiff made its initial argument, this statement does not assist the court with the task of determining what relief is appropriate.

Plaintiff has prevailed on the merits of its claim, but in fashioning the proper remedy, the court is sensitive to the agency's need to ensure the continuity of critical medical services. The patients of SAMHS should not be made to suffer for the agency's procurement error. To that end, the court will extend plaintiff the opportunity to submit further analysis of whether permanent injunctive relief is appropriate here, and how that remedy would be implemented given the unique constraints of this case. Defendant and intervenor-defendants will be heard in response.

IV.     Conclusion

For the foregoing reasons, as to the second count in the complaint, plaintiff's motion for judgment on the administrative record, ECF No. 43, is **GRANTED**; intervenor-defendants' cross-motion for judgment on the administrative record, ECF No. 50, is **DENIED**; and, defendant's cross-motion for judgment on the administrative record, ECF No. 51, is **DENIED**.

On or before **May 9, 2018**, plaintiff shall **FILE** a **renewed motion** presenting to the court its analysis of why permanent injunctive relief, in addition to a declaratory judgment, is appropriate to remedy the error alleged in the second count of the complaint. Defendant and intervenor-defendants may **FILE** their **responses** to plaintiff's renewed motion, on or before **May 16, 2018**.

In addition, on or before **May 9, 2018**, the parties shall **CONFER** and **FILE** a **joint proposed redacted version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out and enclosed in brackets.

IT IS SO ORDERED.

                                                s/Patricia Campbell-Smith
                                                PATRICIA CAMPBELL-SMITH
                                                Judge