# In the United States Court of Federal Claims

No. 17-1875C

(E-Filed: July 5, 2018)[1]

| | | |
|---|---|---|
| GLOBAL DYNAMICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | Bid Protest; Sole-Source Bridge |
| | ) | Contract; Permanent Injunctive Relief, |
| and | ) | 28 U.S.C. § 1491(b)(2) (2012). |
| | ) | |
| GIACARE and MEDTRUST JV, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MEDTRUST, LLC, | ) | |
| | ) | |
| Intervenor-defendants. | ) | |

Craig A. Holman, Washington, DC, for plaintiff. Michael E. Samuels and Alexandra L. Barbee-Garret, of counsel.

Tanya B. Koenig, Trial Attorney, with whom appeared Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Jessica E. Hom and Evan

---

[1] This opinion was issued under seal on June 28, 2018. The parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. No redactions were proposed by the parties. Thus, the sealed and public versions of this opinion are identical, except for the publication date and this footnote.

C. Williams, United States Army Legal Services Agency, of counsel. John T. Harryman and Eugene J. Smith, United States Army Medical Command, of counsel.

Jacqueline K. Unger, Washington, DC, for intervenor-defendants.

OPINION

CAMPBELL-SMITH, Judge.

Before the court is plaintiff's renewed motion for permanent injunctive relief. See ECF No. 81. Defendant and intervenor-defendants filed responses. See ECF Nos. 81, 82. The motion is fully briefed and ripe for ruling. For the following reasons, plaintiff's motion is **DENIED**.

I.  Background

This bid protest involves a dispute related to the award of a contract for registered nursing (RN) services for the San Antonio Military Healthcare System (SAMHS). See ECF No. 1 at 7-8 (complaint). Given that the court has previously issued two substantive opinions in this matter, see ECF Nos. 61, 78, it will not recount the detailed facts beyond what is relevant to deciding the issue presently before the court.

On February 27, 2018, the court issued an opinion and order in which it ruled on two of the three counts that plaintiff alleges in its complaint. See ECF No. 61. The court remanded the matter to the United States Department of the Army for additional development of the factual record with regard to the second, and only remaining, count. See id. Following remand proceedings before the agency, the court granted plaintiff's motion for judgment on the administrative record as to the second count of the complaint, and denied defendant's and intervenor-defendants' cross-motions for judgment on the administrative record as to the second count of the complaint. See ECF No. 78.

Specifically, the court held:

> [T]he fifth sole-source award lacked a rational basis, and therefore, the agency's decision to make the award did not comport with the requirements for awarding a contract outside of the competitive process. See 10 U.S.C. § 2304(c)(1). The court also finds that plaintiff was prejudiced by the agency's error. In the long history of this procurement, plaintiff has been awarded the contract three times. See ECF No. 61 at 3-4. Thus, had the agency timely completed the corrective action and awarded the contract, there is good reason to believe plaintiff had a substantial chance of being the awardee. See Alfa Laval, 175 F.3d at 1367 (stating that in order to establish prejudice, "the protester must show 'that there was a substantial chance it would have

2

received the contract award but for that error'") (quoting Statistica, 102 F.3d at 1582).

ECF No. 78 at 9.  The court noted, however, that plaintiff failed to "address the factors for injunctive relief as they apply specifically to the second count of the complaint."  Id.  In service of the court's goal of "fashioning the proper remedy," the court "extend[ed] plaintiff the opportunity to submit further analysis of whether permanent injunctive relief is appropriate here, and how that remedy would be implemented given the unique constraints of this case."  Id.  That additional analysis, along with defendant's and intervenor-defendants' responses, is now before the court.

II. Legal Standards

Pursuant to the Tucker Act, this court has the authority to grant "any relief the court considers proper . . . including injunctive relief."  28 U.S.C. § 1491(b)(2) (2012).  As the United States Court of Appeals for the Federal Circuit has held:

> To determine if a permanent injunction is warranted, the court must consider whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief.

Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)).

III. Analysis

In this case, plaintiff has already prevailed on the merits of its claim.  See ECF No. 78.  As such, the court will focus its analysis on the remaining three factors required for permanent injunctive relief.

A. Irreparable Harm

With regard to irreparable harm, plaintiff argues that it will suffer irreparable harm in the form of the lost opportunity to compete fairly for the award at issue.  See ECF No. 81 at 9.  It also alleges that a permanent injunction against performance of the remainder of the fifth sole-source contract is the only remedy that would address the improper award.  See id. at 9-10.  In response, both defendant and intervenor-defendants argue that plaintiff will not suffer irreparable harm absent injunctive relief because plaintiff would not be eligible to compete for a new sole-source bridge contract.  See ECF No. 82 at 7-8; ECF No. 83 at 6.

Plaintiff is correct that the lost opportunity to fairly compete for an award, and the resulting lost profits, generally qualify as irreparable harm. See, e.g., Fed. Acquisition Servs. Team, LLC v. United States, 124 Fed. Cl. 690, 708 (2016) ("It is well-established that the profits lost by an offeror because of the government's arbitrary or unlawful rejection of an offer constitute irreparable injury for purposes of injunctive relief."); Hosp. Klean of Tex., Inc. v. United States, 65 Fed. Cl. 618, 624 (2005) ("Here, absent injunctive relief, [the protestor] will lose the opportunity to earn the profit it would have made under this contract. Such loss of profit, stemming from a lost opportunity to compete for a contract on a level playing field has been found sufficient to constitute irreparable harm.") (citations omitted). The application of this generally straight-forward rule to this case, however, is more nuanced.

The harm that plaintiff will suffer must be prospective in nature. Plaintiff must show that it "will suffer irreparable harm if the court withholds injunctive relief," not that it has suffered irreparable harm as a result of defendant's conduct. Centech, 554 F.3d at 1037 (citing PGBA, 389 F.3d at 1228-29). Plaintiff alleges that it will suffer irreparable harm if the court declines to enjoin performance of the fifth sole-source contract because "MEDCOM will continue its sole source contract with MedTrust." ECF No. 81 at 9. The only way that plaintiff could be harmed by the continued performance of the sole-source contract, even given that it was improperly awarded, is if injunctive relief could put plaintiff in a position to receive an award and begin performance prior to the expiration of that contract, here September 30, 2018.

Plaintiff argues that the agency "has received final proposal revisions from the two remaining offerors," and states that it considers allowing the agency "another 22 days for the re-competition evaluation and 45 days for transition," to be a reasonable timeframe in which performance could begin. ECF No. 81 at 13. Counting those days out from the date on which plaintiff filed its renewed motion, it concludes that performance on the new contract should begin no later than July 16, 2018. See id.

In making its calculation, plaintiff failed to account for the time consumed by this litigation process. The court appreciates plaintiff's desire for a quick result in this case, but plaintiff must be mindful of the delays interposed in this process, particularly by the need for supplemental briefing on this issue. At this point, even under plaintiff's version of a reasonable timeframe for performance on a new contract to begin, only about three weeks would remain under the presently effective sole-source contract. Certainly irreparable harm may be suffered in the space of three weeks, but plaintiff would stand to suffer far less than it asserts.

B.   Balance of Hardships

As to the balance of hardships, plaintiff argues that it would suffer more harm absent injunctive relief than the agency would suffer if such relief is granted. See ECF

4

No. 81 at 11.  Specifically, plaintiff claims that it would "lose the opportunity to compete for this work."  ECF No. 81 at 11.  Plaintiff also suggests that it would suffer a separate hardship as a result of the agency's apparent intention to allow full performance of the improper sole-source contract.  See id.  Plaintiff contends that the agency would suffer no hardship as a result of injunctive relief because it would have "ample time to complete the corrective action and transition the work before July 16, 2018."  ECF No. 81 at 12.  For its part, defendant claims that "plaintiff's timeline is unrealistic," and contends that it would be "severely harmed" by an injunction.  ECF No. 83 at 7, 8.

Plaintiff would only be precluded from competing for the work left to perform between a transition of the contract and September 30, 2018.  As plaintiff notes, it remains an offeror with regard to the main procurement.  See ECF No. 81 at 13.  And the court agrees that plaintiff's proposed date for termination of the present sole-source contract of July 16, 2018, is unreasonable.  As explained above, this is true even under plaintiff's own rationale.  Therefore, the court concludes that the balance of hardships militates against the requested injunction in this case.

      C.     Public Interest

With regard to how an injunction would impact the public interest, the court notes that "[i]t is axiomatic that the public has an interest in honest, open, and fair competition in the procurement process.  Whenever a plaintiff is improperly excluded from that process, that interest is compromised."  Cincom Sys., Inc. v. United States, 37 Fed. Cl. 266, 269 (1997) (citing Magellan Corp. v. United States, 27 Fed. Cl. 446, 448 (1993)); see also Alion Sci. & Tech. Corp. v. United States, 74 Fed. Cl. 372, 376 (2006) ("It is well established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations.") (citation omitted); Metcalf Constr. Co. v. United States, 53 Fed. Cl. 617, 645 (2002) (noting the twin goals of preserving "public confidence and competition in the federal procurement process") (citation omitted).

The court also recognizes the "paramount import" of the public interest in protecting services related to national defense and national security.  See Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 702 (2010) (quoting Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 521 (2003)).  "This paramount interest is directly implicated when a procurement involves services critical to the success of military operations and to the health and safety of our servicemen and women in the field."  Id.  The agency's mission in this case implicates those concerns.  See ECF No. 47-1 at 1015 (administrative record) ("The mission of the military healthcare system (MHS) is to enhance our Nation's security by ensuring the nation has a healthy military force capable of providing the full range of military operations supported by a combat ready healthcare system sustaining the health of DoD beneficiaries.").

In addition, as this court has noted, "protecting the public fisc" is also a strong public interest. Furniture by Thurston v. United States, 103 Fed. Cl. 505, 521 (2012). In order to protect this interest, injunctive relief may be inappropriate "when a contract has been substantially completed." Id. See also CW Gov't Travel, Inc. v. United States, 163 Fed. App'x 853, 859 (Fed. Cir. 2005) (affirming this court's denial of injunctive relief despite a presumption of success on the merits and irreparable harm where a significant portion of the work on a contract had been completed and a new contractor was not ready to immediately take over performance).

The court acknowledges the tension created in attempting to protect all of these public interests in the present case. Defendant has clearly acted improperly in awarding the fifth sole-source contract in this instance. See ECF No. 78. But despite the undeniable interest in protecting the fairness of our procurement process, the court cannot, in good conscience, grant an injunction that would risk an interruption in medical services to military personnel and their dependents, particularly given that the contract would be nearly complete by the time a transition of services could be made. Accordingly, plaintiff has failed to demonstrate that the public interest weighs in its favor.

IV.   Conclusion

For the foregoing reasons, plaintiff's renewed motion for permanent injunctive relief, ECF No. 81, is **DENIED**.

The clerk's office is directed to **ENTER** final judgment in plaintiff's favor as to the remaining claim (Count Two) in this matter, pursuant to the court's April 25, 2018 opinion, ECF No. 78.

On or before **July 13, 2018**, the parties shall **CONFER** and **FILE** a **joint proposed redacted version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out.

IT IS SO ORDERED.

                                              s/Patricia Campbell-Smith
                                              PATRICIA CAMPBELL-SMITH
                                              Judge